| USDC SDNY |
|---|
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: ________________ |
| DATE FILED: 9/4/2019 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH LUCKEY,

Plaintiff,

-against-

CAPTAIN JONAS, et al.,

Defendants.

18 Civ. 8103 (AT) (KNF)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Jeremiah Luckey, brings this action under 42 U.S.C. § 1983, alleging that during his detention at the Manhattan Detention Complex ("MDC") various employees of the New York City Department of Correction ("DOC"), including DOC Captain Jonas, Correction Officers ("COs") Yarygin, Simon, Simpson, Lisichkin, and Joseph violated his constitutional rights. Compl., ECF No. 2. Construed liberally, Plaintiff claims that Defendants (1) failed to protect Plaintiff from an inmate attack; (2) and failed to protect him from slipping on spilled water, each in violation of Plaintiff's Fourteenth Amendment rights. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 15.[1] For the reasons stated below, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The following facts are taken from Plaintiff's complaint, which the Court accepts as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). On July 9, 2019, while housed at MDC, Plaintiff "slipped and fell due to water that wasn't cleaned up" while being escorted within the facility. Compl. at 4. There were no

[1] Lisichkin and Joseph did not initially join the motion to dismiss because they had not yet been served. Def. Mem. at 6 n.1, ECF No. 18. On March 7, 2019, the DOC executed a waiver of service on behalf of both Defendants. ECF No. 20. On March 25, 2019, the Court granted Defendants' request to have the motion apply equally to Lisichkin and Joseph. ECF No. 22.

"wet floor signs" posted. *Id.* Plaintiff was injured during the fall in part because his legs and hands were shackled. *Id.*

After falling, Plaintiff remained on the floor for an hour and a half until the Emergency Medical Technicians ("EMTs") put him on a stretcher. *Id.* During that time, other inmates hit him with objects and splashed him with "an unknown substance which made [his] eyes go blurry." *Id.* Defendants did nothing to stop the other inmates' behavior, which Plaintiff characterizes as "assault[]." *Id.*

Plaintiff's lower back, ankles, and wrists "still bother [him]" and his "eyesight hasn't been the same." *Id.* at 5. He "received a neck brace." *Id.* The incident put him under "extreme emotional and mental distress." *Id.*

**DISCUSSION**

I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Pro se* plaintiffs receive special solicitude from courts. Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal

quotation marks and citations omitted). That said, pleadings cannot survive by making "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). A court should reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and "bald assertions" unsupported by details which are sufficient to meet the minimum pleading requirements for a cause of action, *Lawtone-Bowles v. N.Y.C. Hous. Auth.*, No. 13 Civ. 1434, 2014 WL 705272, at *2–3 (S.D.N.Y. Feb. 20, 2014).

Finally, although Plaintiff failed to oppose Defendants' motion to dismiss, "failure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint." *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. July 30, 2007). "'[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Gregory v. Ricigliano*, No. 12 Civ. 4372, 2014 WL 119475, at *5 (E.D.N.Y. Jan. 10, 2014) (quoting *Goldberg v. Danaher*, 599 F.3d 181, 184 (2d Cir. 2010)). The Court, therefore, "must assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* (internal quotation marks and citation omitted).

## II. Analysis

Construed liberally, Plaintiff claims that Defendants violated his Fourteenth Amendment rights by their (1) deliberate indifference to unconstitutional conditions of confinement, and (2) failure to protect him from an inmate-on-inmate attack.

A. Conditions of Confinement

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).[2] This is because pretrial detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id.* (internal quotation marks and citation omitted).

To establish a claim for deliberate indifference to unconstitutional conditions of confinement, a pretrial detainee must show that "the officers acted with deliberate indifference to the challenged conditions." *Id.* This means that a pretrial detainee must satisfy two prongs to state a claim:

> an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a "subjective prong"—perhaps better classified as a "*mens rea* prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions.

*Id.* The "*mens rea* prong" is defined objectively: "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence is not enough. *Id.* at 36.

---

[2] As of September 5, 2018, when Plaintiff filed his complaint, he indicated that he was a pretrial detainee. Compl. at 2. Defendants' motion also treats Plaintiff as a pretrial detainee. Def. Mem. at 9. For purposes of this motion, the Court assumes that Plaintiff was a pretrial detainee at all relevant times. *See Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 538 n.5 (S.D.N.Y. 2016).

Courts in this Circuit have routinely held that "allegations of wet floor conditions that cause a prisoner to slip and fall, standing alone, do not satisfy the first prong of a conditions of confinement claim." *Lopez v. Phipps*, No. 18 Civ. 3605, 2019 WL 2504097, at *8 (E.D.N.Y. June 17, 2019) (collecting cases); *Strange v. Westchester Dep't of Corrs.*, No. 17 Civ. 9968, 2018 WL 3910829, at *3 (S.D.N.Y. Aug. 14, 2018) ("District courts in this Circuit have repeatedly held that, standing alone, a claim that a prisoner fell on a slippery floor and injured himself fails to satisfy the first prong of a conditions-of-confinement claim.").

Plaintiff's allegations also fail to satisfy the second prong because he does not allege any facts indicating that Defendants acted intentionally or recklessly. *Darnell*, 849 F.3d at 35; *Strange*, 2018 WL 3910829, at *3 (plaintiff failed to satisfy second prong when his allegations did not demonstrate that officers acted intentionally or recklessly). He does not plead any facts indicating that Defendants had prior knowledge of the wet floor such that the Court could reasonable infer that Defendants acted intentionally or recklessly.

Because Plaintiff fails to allege facts satisfying either prong of a deliberate indifference to conditions of confinement claim, Defendants' motion to dismiss the claim is GRANTED.[3]

B. Failure to Protect

The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "In particular, a prison official has a duty to protect prisoners from violence from other prisoners." *Nunez v. Goord*, 172 F. Supp. 2d 417, 430

[3] Because the Court finds that the complaint fails to state a conditions of confinement claim against any Defendant, it does not reach Defendants' alternative argument that they are entitled to qualified immunity. *See Peterson v. Tomaselli*, No. 02 Civ. 6325, 2003 WL 22213125, at *8 (S.D.N.Y. Sept. 29, 2003); *Lee v. Coughlin*, No. 93 Civ. 8952, 1997 WL 193179, at *4 (S.D.N.Y. Apr. 18, 1997).

(S.D.N.Y. 2001). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A prison official's failure to protect is a Fourteenth Amendment violation only "where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of N.Y,*, 667 F. Supp. 2d 355, 360–61 (S.D.N.Y. 2009) (quoting *Farmer*, 511 U.S. at 828).

The two-pronged framework for claims of deliberate indifference set forth in *Darnell* "applies with equal measure to failure to protect claims." *Taylor v. City of N.Y.*, No. 16 Civ. 7857, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018). A plaintiff must therefore show "(1) that the failure to intervene or protect the inmate was sufficiently serious such that it caused an unquestioned and serious deprivation of basic human needs and (2) that the defendant acted with a sufficiently culpable state of mind." *Corley v. City of N.Y.*, No. 14 Civ. 3202, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017) (internal quotation marks and citation omitted). The second prong is measured by an objective standard: whether a defendant "knew, or should have known" that his or her conduct "posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 33, 35.

Beginning with the first prong, "[t]here is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (internal quotation marks and citation omitted). "The failure of a correction officer to . . . intervene in an attack . . . may under certain circumstances create a condition which poses a substantial risk of serious harm thus constituting a sufficiently serious constitutional violation." *Molina v. Cty. of Westchester*, No. 16 Civ. 3421, 2017 WL 1609021, at *3 (S.D.N.Y. Apr. 28, 2017). "[I]n assessing whether the

risk of an inmate's violence against other inmates is sufficiently serious, to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." *Blake v. Kelly,* No. 12 Civ. 7245, 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014) (internal quotation marks and citation omitted). Although "[a] substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker," *Gilmore v. Rivera*, No. 13 Civ. 6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014), it can exist even "in the absence of any allegation of a history of altercations between plaintiff and his attacker," *Blake*, 2014 WL 4230889, at *5.

Here Plaintiff alleges that he was "hit with objects and splashed with an unknown substance which made his eyes go blurry" for "about an hour and a half" until the EMTs arrived. Compl. at 4. He further alleges that his "eyesight hasn't been the same" ever since. *Id.* at 5. He does not plead any facts indicating that there were prior altercations between him and his alleged attackers. The Court, however, finds this immaterial given the extended duration of the attack. Construing the complaint liberally, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly alleged that Defendants' actions may have put Plaintiff at risk of serious harm. Allowing Plaintiff to be "hit with objects and splashed with an unknown substance," Compl. at 4, for over an hour and a half as he lay on the ground injured, waiting for an EMT to arrive, does not comport with "contemporary standards of decency." Moreover, this led to an impairment in Plaintiff's vision. In reaching this conclusion, the Court is cognizant that Plaintiff's injuries from the slip and fall were serious enough to necessitate EMTs and the use of a stretcher.

Defendants argue that Plaintiff has failed to meet the second prong because "there are no facts upon which this Court could plausibly infer that defendants were previously aware of any risk of attack by other inmates" and courts have "recognized that a defendant correction officer cannot be liable for a surprise attack." Def. Mem. at 13–14. A "surprise attack," however, is only a surprise for so long: Plaintiff alleges that he was on the floor being "assaulted" for an hour and a half while the Defendants "did nothing to stop" the attack. Compl. at 4. The "surprise attacks" in the cases Defendants cite involve situations where the defendants (1) had no prior knowledge to suggest an attack was coming, and (2) were not present for the attack or the attack was so short that there was no time to intervene. *See Franzese v. City of N.Y.*, No. 17 Civ. 3020, 2018 WL 5924354, at *3 (S.D.N.Y. Nov. 13, 2018) (subjective prong was not met when defendant had no reason to know that the plaintiff's safety was at risk and it was "not plausible that [the d]efendant would have been able to intervene and prevent the [30 second] attack"); *Parris v. N.Y. State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 358 (S.D.N.Y. 2013) (correctional officers did not notice the assault for several minutes); *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 4294, 2010 WL 1222017, at *1 (S.D.N.Y. Mar 29, 2010) (alleging that no officers were monitoring the area when the assault occurred and separated the two inmates when they saw the altercation).

Although Defendants might not have had prior knowledge that the attack was going to occur, once it began, their failure to stop it for over an hour is sufficient for Plaintiff to adequately allege the second prong.[4] *See Taylor*, 2018 WL 1737626 at *12 ("Likewise, plaintiff

[4] Defendants argue that "there are no facts suggesting that defendants could see the inmates throwing liquid and objects, such that they had a reasonable opportunity to intervene." Def. Mem. at 14. The Court disagrees. Plaintiff alleges that the "assault" took place after he fell while being transported by "the northmax captain and 2 other correctional officers." Compl. at 4. Accordingly, making all reasonable inferences in Plaintiff's favor, the facts suggest that those individuals were present for the attack.

here has stated a claim for deliberate indifference to safety against [defendant], who witnessed the attack on plaintiff and allegedly failed to take action to prevent it."). Plaintiff, therefore, has alleged sufficient facts to satisfy the second prong.

C. Qualified Immunity

"Under 42 U.S.C. § 1983, a public official is entitled to qualified immunity if her acts did not violate clearly established rights of which a reasonable officer would have known, or if she reasonably believed that her conduct did not violate those rights." *Desulma v. City of N.Y.*, No. 98 Civ. 2078, 2001 WL 798002, at *8 (S.D.N.Y. July 6, 2001). Defendants acknowledge that "[i]t is clearly established that inmates have the right to be free from harm inflicted by fellow prisoners and that corrections officers have an obligation to protect inmates from a known and substantial risk of serious harm," Def. Mem. at 18 (citing *Dublin v. N.Y.C. Law Dept*., No. 10 Civ. 2971, 2012 WL 4471306, at *7 (S.D.N.Y. Sept. 26, 2012)), but contend that they are entitled to qualified immunity on Plaintiff's failure to protect claim because there is no clearly established right to be free from harm inflicted by a "surprise attack." Def. Mem. at 18. However, as discussed above, due to the prolonged nature of this attack, it cannot properly be deemed a surprise attack. Defendants, therefore, are not entitled to qualified immunity on that ground.

D. Potential State Law Claims

Construed liberally, Plaintiff also asserts negligence-based claims arising out of the slip and fall and the inmate assault. Defendant moves to dismiss the negligence claim "premised upon defendants' purported failure to clean up water on the floor." Def. Mem. at 20.

"Under New York law, which applies to this case, a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to

plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks and citation omitted). "[T]he State owes a duty of care to inmates for foreseeable risks of harm." *Sanchez v. State of New York*, 99 N.Y.2d 247, 255 (N.Y. 2002). "[F]oreseeability is defined not simply by actual notice but by actual or constructive notice." *Id.* (italics omitted). In other words, what Defendants "knew or had reason to know" or what they "[are] or should be aware of." *Id.* Defendants argue that Plaintiff has failed to allege that the wet floor was a foreseeable risk. Def. Mem. at 20. The Court agrees. As previously discussed, Plaintiff has failed to allege any facts demonstrating that Defendants had any prior knowledge of the wet floor, or that they should have.[5]

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff may proceed on his claims for failure to intervene under 42 U.S.C. § 1983 and negligent supervision under state law arising from the inmate attack.

Plaintiff is warned that failure to respond to Court orders may result in dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b).

The Clerk of the Court is directed to terminate the motion at ECF No. 15 and to mail a copy of this order and all unpublished cases cited herein to Plaintiff *pro se*.

SO ORDERED.

Dated: September 4, 2019
New York, New York

ANALISA TORRES
United States District Judge

[5] Defendants do not move to dismiss Plaintiff's claim for negligent supervision arising out of the inmate attack. *See generally* Def. Mem. Accordingly, the Court does not address the issue.